# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MARY A. ABBOTT,

        Appellant,

      v.

UNITED STATES POSTAL SERVICE,

        Agency.

DOCKET NUMBER
DC-0752-12-0366-B-1

DATE: December 20, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Allison E. Eddy</u>, Esquire, Virginia Beach, Virginia, for the appellant.

<u>Jasmin A. Dabney</u>, Landover, Maryland, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1       The appellant has filed a petition for review of the remand initial decision, which affirmed the agency's suspension action. For the reasons discussed below, we GRANT the appellant's petition for review and VACATE the remand initial decision insofar as it sustained the appellant's placement on enforced leave, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

we REVERSE the agency's suspension action. We AFFIRM the administrative judge's finding that the appellant failed to prove disability discrimination.

## BACKGROUND

¶2 The following facts, as set forth in the initial decision, are undisputed. The appellant held the position of EAS-17 Supervisor, Customer Services, at the agency's Denbigh Postal Station in Newport News, Virginia. Initial Appeal File (IAF), Tab 43, Initial Decision (ID) at 2. On December 30, 2011, following an extended absence, she submitted a request to return to work in a light-duty assignment,[2] as well as a light-duty medical certification from her physician, Dr. R.B., indicating her medical restrictions. IAF, Tab 8 at 68, 70. The Officer-in-Charge denied the appellant's request because there was no work available within her medical restrictions. *Id*. at 70.

¶3 On January 6, 2012, the agency proposed placing the appellant on enforced leave because of the lack of available work within her medical restrictions, and provided her with an opportunity to reply. ID at 2; IAF, Tab 8 at 57, 61. On January 21, 2012, the agency's District Reasonable Accommodation Committee (DRAC) contacted the appellant, seeking additional documentation to determine whether accommodation of her medical restrictions was appropriate. IAF, Tab 8 at 50.

¶4 On January 24, 2012, the appellant faxed the proposing and deciding officials a letter from Dr. R.B. dated January 23, 2012. IAF, Tab 8 at 27, 34-35, Tab 25 at 102-05. Dr. R.B. stated that he was clarifying the appellant's work restrictions. IAF, Tab 25 at 105. The appellant and her attorney met with the proposing and deciding officials on January 26, 2012, regarding the enforced

---

[2] While the appellant's light-duty request is dated December 29, 2011, it was submitted to the agency on December 30, 2011, along with a light-duty certificate dated December 30, 2011. IAF, Tab 8 at 64-66.

leave action. The agency issued a final decision effecting the enforced leave action on February 8, 2012. ID at 2; IAF, Tab 8 at 17-18.

¶5    Following the agency's decision, the appellant submitted additional medical documentation to the DRAC on April 30, 2012, indicating that she is able to perform her essential duties within an 8-hour work day, alternating between sitting, standing, and walking, and that she could work minimal overtime. IAF, Tab 25 at 135-43. The Office of Personnel Management subsequently granted the appellant's application for disability retirement, effective June 4, 2012. IAF, Tab 27 at 38.

¶6    The appellant filed the instant appeal, alleging that her placement on enforced leave was a constructive suspension. IAF, Tab 1. After a jurisdictional hearing, the administrative judge dismissed the appeal for lack of jurisdiction, finding that the appellant failed to establish that the agency's action constituted a constructive suspension. ID at 10. The administrative judge also determined that, absent an otherwise appealable action, the Board lacked jurisdiction to consider the appellant's affirmative defenses. *Id.* On review, the Board reversed the initial decision, finding that the agency's placing the appellant on enforced leave for more than 14 days constituted an appealable suspension within the Board's jurisdiction, and remanded the appeal for adjudication on the merits. *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶¶ 10-11 (2014).

¶7    On remand, the administrative judge found that the agency proved that the appellant was unable to perform the essential functions of her job due to her medical restrictions. Remand File (RF), Tab 10, Remand Initial Decision (RID) at 6-13. Thus, the administrative judge sustained the agency's charge. RID at 13. The administrative judge further found that the appellant failed to establish her affirmative defenses of disability discrimination, denial of due process, or harmful error. RID at 21, 30. After finding nexus, the administrative judge determined that the appellant's suspension was warranted. RID at 32.

¶8     The appellant has filed a petition for review of the remand initial decision. Remand Petition for Review (RPFR) File, Tab 1.  She argues that the administrative judge erred in sustaining the agency's action and denying her reasonable accommodation claim.  *Id*. at 19-31.  The agency has responded to the petition for review.  RPFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9     Placing an employee in enforced leave status for more than 14 days constitutes an appealable suspension within the Board's jurisdiction.  *Abbott*, 121 M.S.P.R. 294, ¶ 10; *see* 5 U.S.C. §§ 7512(2), 7513(d), 7701(a).  To sustain such suspensions, the agency must prove by preponderant evidence that the charged conduct occurred, that a nexus exists between the conduct and the efficiency of the service, and that the penalty is reasonable.  *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997); *Abbott*, 121 M.S.P.R. 294, ¶ 10; *Norrington v. Department of the Air Force*, 83 M.S.P.R. 23, ¶ 8 (1999).[3]

¶10    Here, the agency's notice proposing the appellant's placement on enforced leave asserted that her medical restrictions prevented her from performing the essential functions of her position of Supervisor, Customer Services.  The notice relied on the December 30, 2011 light-duty medical certification from the appellant's doctor.  IAF, Tab 8 at 61.  In pertinent part, the proposal notice cited to the appellant's inability to stoop, squat, twist, or bend repeatedly; her limitation of lifting or carrying up to 20 pounds for 2 hours; and her limitation of walking, standing, sitting, and climbing for 2 hours each.  *Id.*  The proposal notice also advised the appellant that she would remain on enforced leave until

---

[3] The appellant continues to reassert her argument that the enforced leave was an invalid indefinite suspension under *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶ 13 (2010).  Specifically, she argues that the agency's action does not fall within any of the three acceptable reasons for an indefinite suspension. RPFR File, Tab 1 at 23-24.  In light of our disposition here, we find it unnecessary to reach this issue.

she submitted satisfactory documentation indicating that she was able to perform the essential functions of her assigned position. *Id.*

¶11    The position description for Supervisor, Customer Services, identifies the "Functional Purpose" of the position as: "Supervises a group of employees in the delivery, collection, and distribution of mail, and in window service activities within a post office, station or branch, or detached unit," but does not identify any specific time requirements to perform each function. *Id.* at 74-75. However, the essential duties and responsibilities for the position as identified in the "essential functions worksheet" used by the DRAC[4] are as follows:

1. Measure Mail – requires walking to the mail area, rearranging and lifting mail to determine accurate volume count, may require reaching above the shoulder. Frequency: 2-3 hours a day, 6-8 times a day, or as needed.

2. Assign Employees – requires walking to determine the need for help or to relocate employees where needed to complete necessary tasks. Frequency: 4-6 hours a day.

3. Use Computer – requires input of data for reports and assignments, type letters, reports and other information. Frequency: 3-5 hours a day.

4. Respond to Customer Inquiries – answer phone, respond to inquiries, review files, compile information and customer contact. Frequency: 2-6 times daily.

5. Identifies Type of Mail in Containers – requires the supervisor to put their hands on the mail to determine the type of mail in container to insure it is processed timely and properly color coded. Frequency: 2-4 times daily

6. Street Supervision – Supervisor walks or rides with an employee. May require walking 2-4 hours for several miles or riding and walking for 2-6 hours, while writing or inputting data in hand held instrument. Frequency: 1-3 times weekly.

---

[4] The hearing testimony reflects that this worksheet was used solely by the DRAC and not by the agency in the enforced leave action. Hearing Transcript (HT) at 447-50 (testimony of the Labor Relations Specialist). Further, this document was never provided to the appellant during her employment with the agency, and the appellant received it for the first time with the agency's prehearing submission. *Id*.

7. Deliver Late Arriving Mail to Employees on the street – may require supervisor to go on street to deliver late mail of 1st class, priority mail, or deliver express mail. Requires walking and/or driving. Frequency: 2-3 hours daily.

8. Window Services – requires standing and walking 2-4 hours to operate two finance, one retail, and one window counter, interacting with customers and processing purchases of items and services. Frequency: Daily

9. Regular attendance – Able to work greater than 8 hours, 6 days a week as necessary and rotating schedules (shifts and/or non-scheduled days). Frequency: up to 10 hours/day; 6 days/week

10. Ability to take corrective, constructive feedback from management. Able to cope with dynamic conditions, must be able to accept directions from management. Frequency: up to 10 hours/day; 6 days/week

IAF, Tab 27 at 39-41 (punctuation and grammar as in the original).[5]

¶12    As stated above, the burden is on the agency to prove by preponderant evidence that the appellant was unable to perform the essential functions of her job due to medical restrictions. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 34 (2015) (reflecting that an agency removing an employee for medical inability to perform her duties was required to prove the charge by preponderant evidence). The proposal notice itself does not identify which essential functions of the appellant's assigned position that she is medically restricted from performing. IAF, Tab 8 at 74-75. The proposing official testified that she recommended denying the appellant's light-duty request because the medical restrictions of 2 hours each on walking, standing, and sitting limited the appellant to a total of 6 hours of work per day. Hearing Transcript (HT) at 86-88 (testimony of the proposing official). The appellant occupied a

---

[5] As set forth, the minimum time to accomplish the daily functions exceeds 11 hours. However, the hearing testimony reflects that overtime was rare because the deciding official had ordered supervisors not to work overtime unless it had been authorized. IAF, Tab 25 at 107; HT at 130 (testimony of the proposing official), HT at 310-11 (testimony of the appellant). Thus, it appears that the specific duties and the amount of time spent on those duties vary daily.

full-time position that required her to work an 8-hour day, 5 days a week. IAF, Tab 8 at 22, Tab 27 at 37.

¶13 The proposing official testified that the appellant could not perform her essential duties in a 6-hour workday because of the various duties she would encounter on a daily basis. HT at 156 (testimony of the proposing official). When specifically asked what part of the appellant's duties required her to walk more than 2 hours at a time, the proposing official stated "dealing with customers, dealing with employees . . . it all depends on what we entail during the day." HT at 99. The proposing official also testified that sitting is minimal, but she admitted that the appellant had duties that are performed while seated, such as writing reports, timekeeping, and counting stock. HT at 102-03. She stated further that her "whole reason" for proposing the suspension was that she could not ensure that the appellant would not go over her restrictions while working. HT at 124-25. She testified that she told the deciding official that "as far as I can see there is no way that I can utilize Ms. Abbott to be a supervisor at my station, being that she can only work 2 hours, 2 hours, 2 hours; I can't ensure that she would be safe." HT at 139. Additionally, the proposing official testified that she never received any medical documentation from the appellant demonstrating that she could work for more than 6 hours. HT at 91.

¶14 Similarly, the deciding official testified that he based his decision on the appellant's 2-hour restrictions for walking, standing, and sitting, and he determined that, given her medical restrictions, the appellant would not have been able to complete her full 8-hour day of work.[6] HT at 362-63, 365. When the deciding official was specifically questioned as to whether the appellant

---

[6] The deciding official testified that he based his enforced leave decision on his determination that the appellant could not work a full 8-hour day. HT at 365-66. However, when specifically asked what duties the appellant could not perform, he also stated that the appellant was medically restricted from working because "she couldn't work in excess of eight hours." HT at 359, 366.

would be able to assist if an incident occurred with a carrier out for delivery at the end of her workday, he stated that the appellant may not be able to respond because she already had stood and walked for 2 hours each and "according to her limitations, she couldn't twist or . . . bend.  She couldn't stoop. She couldn't climb."  HT at 370-71.

¶15      Likewise, the acting Officer-in-Charge testified that she disapproved the appellant's light-duty request because the appellant could not work a full shift, given that she could "only walk two hours, stand two hours, and sit two hours." HT at 216-18, 222.  Additionally, the agency Labor Relations Specialist testified that she had been Chairperson of the DRAC for approximately 10 years, and that, in her opinion, the appellant could not perform her full duties under the restriction of 2 hours of standing, 2 hours of sitting, and 2 hours of walking because "it's an 8 hour position."  HT at 450-51.  Thus, the testimonial and documentary evidence reflect that the agency suspended the appellant based on its conclusion that she could not work an 8-hour day.  IAF, Tab 8 at 68.

¶16      However, while all four agency officials testified that the appellant's December 30, 2011 medical certification restricted her to 2 hours each of walking, standing, and sitting, they did not address the remaining limitations on the appellant's medical form, including 2 hours of climbing steps or ladders.[7] IAF, Tab 8 at 61, 68.  When added to the other restrictions, it appears that the appellant could work 8 hours per day.  In fact, as set forth above, the deciding official even testified that the appellant "could not climb," contrary to the explicit 2-hour climbing limitation on the medical certification.  HT at 371. Further, the December 30, 2011 medical certification also specifically stated that the appellant could not work overtime, which was not considered by the agency

---

[7] The appellant's medical certification also indicated that she could lift or carry up to 20 pounds for 2 hours and reach or work above the shoulder for 2 hours.  IAF, Tab 8 at 61.

officials in determining whether the appellant's medical restrictions precluded her from working an 8-hour day. IAF, Tab 8 at 68.

¶17 Moreover, it is undisputed that on January 24, 2012, after the agency issued the proposal notice but prior to issuing the decision letter, the proposing and deciding officials were faxed Dr. R.B.'s January 23, 2012 letter, intended to "clarify" the appellant's work restrictions. IAF, Tab 8 at 27, 34-35, Tab 25 at 102-04. Dr. R.B. certified that the appellant could work in a supervisory position with "certain accommodations including frequent work breaks, rest from prolonged standing and walking, no route inspections esp[ecially] in inclement weather, and no work overtime." IAF, Tab 8 at 27. He further wrote that the appellant "can still perform certain tasks **such as** lifting/carrying no [more than] 20 lbs, walking, standing, climbing steps or ladders and sitting **over a regular 8-hour workday**, not to exceed 2 hours per each individual activity." *Id*. at 33 (emphasis added). This statement is consistent with the December 30, 2011 medical certification, which reflected that the appellant could not work overtime, implying that she was not medically restricted from working an 8-hour day.

¶18 On January 26, 2012, the agency, the appellant's attorney, and the appellant met to discuss her medical restrictions. The proposing and deciding officials testified that they discussed the appellant's 6-hour workday limitation during the meeting; however, the administrative judge found their testimony not credible. IAF, Tab 41; RID at 25-26. She found that it was more likely than not that the agency did not advise the appellant that it was relying on the perceived 6-hour workday limitation. RID at 25-26. Thus, the administrative judge found that the appellant did not have the opportunity to respond to this concern. *Id*. Because the administrative judge based this finding on her observation of the demeanor of the witnesses while testifying at the hearing and the evidentiary record, we see no basis upon which to overturn it. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002) (finding that the Board may overturn

credibility determinations that are implicitly or explicitly based on demeanor only when it has "sufficiently sound" reasons for doing so).

¶19     Thus, while all the agency officials testified that they concluded that the appellant was medically restricted from working an 8-hour day, they disregarded information from Dr. R.B. to the contrary. They also failed to clarify at the January 26, 2012 meeting whether the appellant was, in fact, limited to 6 hours of work per day. Accordingly, because the agency did not prove by preponderant evidence that the appellant could only work a 6-hour day, we find that the agency failed to prove the charge. Therefore, we reverse the agency's suspension action.

¶20     In addition, the appellant reasserts her argument that she was denied reasonable accommodation for a disability.[8] RPFR File, Tab 1 at 24-28. We affirm the administrative judge's determination that the appellant failed to establish her affirmative defense of disability discrimination.[9] As the administrative judge correctly found, even though the appellant may have been able to prove that she was a qualified individual with a disability and that there were reasonable accommodations available, her disability discrimination claim still fails. The record reflects that both parties were engaged in the interactive process up until the time the agency received notification that the appellant would start receiving disability retirement benefits and that accommodation would no longer be needed. *See, e.g.*, *Clemens v. Department of the Army*,

---

[8] The appellant's remaining arguments on review challenge the administrative judge's determination that she failed to establish that the agency violated her right to due process and committed harmful error. However, in light of the Board's determination that the agency did not prove its charge, a finding of either due process error or harmful procedural error would not entitle the appellant to any additional relief. We therefore need not address these arguments.

[9] The appellant has not challenged the administrative judge's determination that she failed to prove that she was subjected to disparate treatment. RPFR, Tab 1. Nevertheless, we have reviewed the administrative judge's determination on this issue and find no basis to disturb it.

[120 M.S.P.R. 616](#), ¶ 17 (2014) (finding that an agency's failure to engage in the interactive process, standing alone, does not violate the Rehabilitation Act; rather, the appellant must show that the omission resulted in a failure to provide reasonable accommodation).

¶21        Specifically, after the appellant received instructions from the DRAC on January 24, 2012, she completed and returned the requested documents on January 27, and the DRAC received those documents on January 30.   HT at 326-28 (testimony of the appellant).   The appellant testified that, after additional contact with the DRAC in March, she submitted all of her additional medical documentation within the 14-day timeframe allotted by the DRAC.  HT at 328-29 (testimony of the appellant).   The DRAC chairperson testified that a telephonic meeting between the DRAC and the appellant was held on May 22, 2012; however, because the DRAC received notification that the appellant would begin receiving disability retirement benefits on June 4, 2012, the DRAC never sent the appellant the formal letter addressing her accommodation request.  HT at 446, 454 (testimony of the DRAC chairperson).   Based on the hearing testimony, we agree with the administrative judge that the agency sufficiently demonstrated that the parties engaged in the interactive process in an attempt to find accommodations within the appellant's medical restrictions.  Thus, we find no basis upon which to disturb the administrative judge's findings regarding the appellant's discrimination claim.

¶22        Accordingly, although we reverse the agency's suspension action, we affirm the administrative judge's denial of the appellant's disability discrimination claim.

## ORDER

¶23        We ORDER the agency to cancel the suspension action.  *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984).   The agency must complete this action no later than 20 days after the date of this decision.

¶24     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶26     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶27     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the U.S. Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  Title 5 of the United States Code, section 7702(b)(1)  (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                    _____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.



# DFAS CHECKLIST

# INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.